IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BELLSOUTH INTELLECTUAL PROPERTY MARKETING CORPORATION,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>BEAR CREEK TECHNOLOGIES, INC.,<br><br>    Defendant and Counter-Claimant,<br><br>v.<br><br>BELLSOUTH TELECOMMUNICATIONS, INC.,<br><br>    Counter-Defendant. | CIVIL ACTION NO.<br><br>CV-00-AR-3743-S |

01 JUL 23 PM 12:41

N.D. OF ALABAMA

ENTERED
JUL 23 2001

### MEMORANDUM OPINION

In its counterclaim filed on January 9, 2001, Bear Creek Technologies ("BC") alleges, among other things, that BellSouth Telecommunications ("BST") and BellSouth Intellectual Property Marketing Corporation ("BIPMC") (hereinafter collectively referred to as "BellSouth") conspired to make it impossible for BC to market and sell software known as Outside Plant Construction Management ("OSPCM"), and failed to deliver a functional version of OSPCM after BC and BST executed a License Agreement in 1996.[1]  On June

---

[1] On or around October 6, 1999, BST, with BC's agreement, assigned its responsibilities under the License Agreement to BIPMC, which was formed by BST for the purpose of selling and marketing BST intellectual



29, 2001, BellSouth filed a motion to compel BC to arbitrate because, according to BellSouth, the subject matter of BC's counterclaim is covered in whole or in part by an arbitration clause contained in an Intellectual Property Agreement ("IP Agreement") executed by the parties in April 1997. For the reasons set forth in the opinion below, BellSouth's motion to compel arbitration will be denied.

## Background Facts

### A.   OSPCM Software

In 1996, BellSouth and Bear Creek entered into a License Agreement for a software application called OSPCM, which is designed to help a telephone company manage the physical construction of telephone facilities. According to BC, the License Agreement obligated BellSouth to deliver a functional version of OSPCM, and associated information and materials, by the end of 1996.

In January 1997, the parties were in dispute over whether BellSouth had met its obligations to deliver information and materials regarding OSPCM to BC. According to BC, in order to resolve this dispute the parties entered an oral agreement by which BellSouth agreed to provide certain information and materials related to OSPCM. BC contends in its counterclaim, which is

---

property.

discussed more fully below, that BellSouth failed to perform under both the License Agreement, and the January 1997 oral agreement.

**B.   TrafficWise Software**

Prior to forming BC, Joseph Thompson ("Thompson") was associated with Pro-Soft. During Thompson's tenure at Pro-Soft, Pro-Soft entered into a contractual relationship with BellSouth concerning the development of software programs related to "customer traffic data gathering" solutions. Subsequently, Thompson ended his association with Pro-Soft, and formed BC. BC then entered into a contractual relationship with BellSouth for software applications that analyzed call traffic on telephone networks. BC called this product "TrafficWise".

**C.   IP Agreement**

According to BC, BellSouth started a dispute over the ownership rights to software developed under the two aforesaid contracts. In order to resolve this dispute, the parties executed an IP Agreement with an effective date of January 1997 (the IP Agreement was executed in April 1997). In relevant part, the IP Agreement states that, "BC desires to freely produce, use, market and sell products pertaining to network usage management, including but not limited to past, present and future generation systems for gathering and collecting customer **traffic** data, producing customer **traffic** studies and reports, and making such studies and reports

3

accessible." IP Agreement ¶ 1.03 (emphasis supplied).

The IP Agreement contains a clause that obligates the parties to arbitrate "any dispute arising out of or relating to" the IP Agreement. IP Agreement ¶ 13.00. The IP Agreement also contains a provision stating that BellSouth and BC "releases and discharges the other party . . . from any and all promises, causes of action, claims, and demands whatsoever in law or in equity, arising or claimed to arise out of any use or handling of the owned Covered Subject Matter referred to herein prior to the effective date of this Agreement." IP Agreement ¶ 20.01. A 'Covered Subject Matter' is defined as "an intellectual property right owned by an owner Party". IP Agreement ¶ 2.01. 'Intellectual property rights' include patent rights, copyright rights and trade secret rights. IP Agreement ¶ 2.00. The IP Agreement is silent regarding the OSPCM software application.

### Discussion of the Four Counts in BC's Counterclaim

In order to determine whether BC's counterclaim implicates the arbitration provision in the IP Agreement, the court must review the specific and separate claims set forth in BC's counterclaim.

A. Count 1

Count 1 alleges that BellSouth committed fraud by failing to disclose the defective condition of the OSPCM software, and the nature and severity of the defects therein. In addition, BC

4

contends that BellSouth failed to support BC's marketing efforts, and that BellSouth planned to put BC under the thumb of a competing entity.

BellSouth contends that the IP Agreement includes a broad release thereby bringing the dispute over the OSPCM software within the parameters of the IP Agreement. BellSouth argues that the OSPCM software is a "covered subject matter", i.e., subject matter in which BellSouth had an intellectual property right, and therefore, is arbitrable.

B. Count 2

BC contends that BellSouth breached the License Agreement by failing to act in good faith and by failing to fulfill its contractual obligations set forth in the License Agreement. BellSouth contends that Count 2 incorporates by reference ¶13 of BC's counterclaim which states that BellSouth "conditioned its providing certain materials [related to OSPCM] on BC's acquiescing to [BellSouth's] demands on an unrelated product." The 'unrelated product' is the TrafficWise software. BellSouth contends that because the TrafficWise software is governed by the IP Agreement, Count 2 is subject to arbitration.

C. Count 3

BellSouth admits that Count 3 is not arbitrable because Count 3 alleges that BellSouth breached an oral agreement made in January

1997 in which BellSouth allegedly obligated itself to provide information and materials to support the OSPCM software platform. This obligation was over and above which BellSouth allegedly undertook and allegedly breached in 1996. As such, BellSouth admits that Count 3 does not allege a claim that could have arisen before the effective date of the IP Agreement.

**D. Count 4**

In Count 4 of the counterclaim, BC claims that BellSouth withheld "basic materials which BellSouth knew were required by BC to market software in order to coerce BC to acquiesce to unrelated issues." BellSouth contends that Count 4, like Count 2, incorporates by reference ¶13 of BC's counterclaim which mentions software, and therefore is subject to arbitration under the IP Agreement.

### Discussion

BC contends that the arbitration provision is inapplicable to its counterlaim because BC does not seek recovery for breach of the IP Agreement, but rather for breach of the License Agreement. BC suggests that BellSouth is trying to "bootstrap" the arbitration provision in the IP Agreement to BC's claims and defenses which arise solely out of the License Agreement. BC says that "it is this incidental link to the TrafficWise product—a link that was initiated by BellSouth—which now serves as the basis for

6

BellSouth's effort to invoke arbitration." *BC's Brief in Opposition to Motion for Leave to Amend,* at 3. Because it has not pled any claim arising out of or relating to the performance under the IP Agreement, BC argues that it should not be compelled to arbitrate. BellSouth, on the other hand, contends that some of BC's claims and defenses concerning OSPCM arise from and relate to the dispute concerning the TrafficWise product, and therefore, are arbitrable pursuant to the provisions of the IP Agreement.

It is well-settled that, under most circumstances, a federal court must refer to arbitration any controversies covered by an arbitration provision. *See Chastain v. Robinson-Humphrey Co.,* 957 F.2d 851, 854 (11th Cir. 1992). Whether a party has agreed to arbitrate is a matter of contract interpretation and that interpretation is guided by the intent of the parties, which, absent ambiguity in the arbitration provision, is evidenced by the plain language of the provision. *See Ex Parte Discount Foods, Inc.,* 2001 WL 29199 (Ala. Jan. 12, 2001). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960).

BellSouth pins its hopes on compelling arbitration upon an expansive and liberal interpretation of the scope of the IP

Agreement. For the IP Agreement to apply to BC's counterclaim the court would need to agree with BellSouth's contention that (1) the OSPCM software falls under the IP Agreement's definition of a 'covered subject matter' (defined as "an intellectual property right owned by an owner Party"); and (2) that the OSPCM dispute somehow arises out of or relates to the IP Agreement, even though the IP Agreement was executed by the parties to specifically resolve a dispute concerning the TrafficWise software application. The court respectfully disagrees with BellSouth's approach here because the IP Agreement is silent as to the OSPCM software, and BC has not pled any breach of contract, tort or other claim relating to or arising out of the IP Agreement. The court will not compel the parties to arbitrate because it would require the court to stretch the language of an unrelated contract, i.e., the IP Agreement, to apply to matters that were not contemplated by the parties when they entered an earlier contract. *See Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc.*, 745 So.2d 271, 274 (Ala. 1999).

    Furthermore, it would be unduly complicated and perhaps would lead to contradictory results if a part of the controversy were tried in an arbitral forum while the balance is tried in this court to a jury. BellSouth, after all, chose this forum.

8

## Conclusion

A separate and appropriate order in conformity with the foregoing opinion will be entered.

DONE this 23rd day of July, 2001

                                  /s/ William M. Acker, Jr.
                                  WILLIAM M. ACKER, JR.
                                  UNITED STATES DISTRICT JUDGE